**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CORNING INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO.: 6:18-cv-06866 |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| DONGGUAN JINGBO ) | |
| OPTOELECTRONICS CO., LTD., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

## COMPLAINT

### I.     INTRODUCTION

1.      Plaintiff Corning Incorporated ("Corning") brings this action for breach of contract against Defendant Dongguan Jingbo Optoelectronics Co., Ltd. ("Jingbo"), and alleges as follows:

2.      Corning was founded in 1851 and has been a pioneer of glass technology for over 167 years.  Among many other historic innovations, Corning developed the first glass bulbs for Thomas Edison's electric light, the glass used for the primary mirror in the Hubble Space Telescope, the windows used in U.S. space vehicles, the first heat-resistant "Pyrex" glass for cooking, and the first low-loss optical fiber that helped usher in the telecommunications revolution.  Today, Corning continues to be one of the world's leading innovators in materials science and specialty glass.

3.      In 2007, Corning developed the first glass to "cover" mobile devices, such as smartphones and tablets.  Corning's cover glass product, called "Corning® Gorilla® Glass," was

the first of its kind, creating a new cover glass industry that Corning still leads.  Corning Gorilla Glass has been used in over 6 billion devices worldwide.

4.     Modern mobile devices need to be durable, lightweight to maximize portability, and as thin as possible to enhance the look, feel, and overall design of the device.  In addition, the cover glass screen of the device must be designed to resist damage from drops, impacts, scratches, heat, and other elements, while remaining optically clear and optimized for use in a touchscreen.  Gorilla Glass was designed to meet all of these challenges.  By pioneering cover glass that is exceptionally durable, thin, lightweight, scratch resistant, impact resistant, and optimized for use as a cover glass for electronic mobile devices, Corning helped to transform the way manufacturers design mobile devices and how people use them.

5.     Gorilla Glass was the culmination of years of research and development, involving hundreds of glass scientists and engineers and massive capital investments.  Since the first generation of Gorilla Glass in 2007, Corning has continued to invest heavily in research and development to improve Gorilla Glass.  To date, Corning has released six generations of Gorilla Glass, with each generation improving on the performance characteristics of the prior generation.  Corning's Gorilla Glass remains the leading cover glass in the industry.

6.     Corning has been awarded many patents in the United States and around the world for its innovations relating to Gorilla Glass.  Corning also has received multiple industry awards recognizing its Gorilla Glass innovations.  In 2010, Corning was awarded the Corporate Technical Achievement Award by The American Ceramic Society for its development of Gorilla Glass.  This award recognizes outstanding commercialized technologies that improve our society.  In 2012, Corning was awarded the Edison Award Gold Medal in Material Science in Enhanced Functionality for Gorilla Glass—one of the highest accolades a company can receive

2

for innovation and business success.  And in 2017, Apple, Inc. awarded Corning the first investment from Apple's "Advanced Manufacturing Fund," which promotes innovation among American manufacturers.  In announcing the investment, Apple's Chief Operating Officer Jeff Williams explained that "Corning is a great example of a supplier that has continued to innovate and they are one of Apple's long-standing suppliers.… This partnership started 10 years ago with the very first iPhone, and today every customer that buys an iPhone or iPad anywhere in the world touches glass that was developed in America.  We're extremely proud of our collaboration over the years and we are investing further with Corning who has such a rich legacy of innovative manufacturing practices."[1]

7.     The exceptional performance of Corning's Gorilla Glass is the direct result of Corning's many innovations.  Multiple patented technologies and highly confidential, proprietary techniques are required to manufacture Gorilla Glass.  These technologies include optimized glass compositions, a "fusion" process for forming strong, pristine, and thin sheets of glass with exceptional optical clarity, and unique "finishing" techniques that strengthen the glass by creating toughened surface layers that act like "armor" against scratching and breakage.

8.     To manufacture Gorilla Glass, Corning begins by forming sheets of glass using its innovative and proprietary compositions and fusion process.  Corning's fusion process involves suspending a molten sheet of glass in mid-air, which then cools to form a pristine, uniform, and thin sheet of glass.  Corning then transfers these sheets of glass to "finishing" companies (or "finishers") that use Corning's proprietary technology—including both patented technologies and highly confidential finishing techniques—to further strengthen the glass.  To enable the

---

[1] *See* Ex. 7 (Apple's May 12, 2017 press release regarding this award, downloaded on October 12, 2018 from https://www.apple.com/newsroom/2017/05/apple-awards-corning-first-advanced-manufacturing-fund-investment/.)  All the Exhibits to this Complaint are incorporated by reference herein.

finishers to do so, Corning shares its proprietary technologies with the finishers and trains their employees to use these technologies.  As described below, Corning provides this information to the finishers pursuant to agreements that include strict confidentiality requirements and limitations that Corning's technology can only be used to produce Corning Gorilla Glass.

9.      Defendant Jingbo is one of the companies that finishes Gorilla Glass.  Effective June 3, 2017, Corning and Jingbo entered into a General Commercial Framework Agreement ("Agreement") for Jingbo to finish Gorilla Glass.  Pursuant to the Agreement, Corning agreed to share its proprietary technology—which is defined in the Agreement as "Corning Technology"—with Jingbo so that Jingbo could finish Gorilla Glass.  Jingbo agreed to keep the Corning Technology confidential and to only use the Corning Technology on Gorilla Glass.[2]

10.      Corning has now discovered that Jingbo has been using Corning Technology in violation of the Agreement to finish and produce cover glass products made from glass that is not supplied by Corning.  Specifically, Jingbo is finishing non-Corning cover glass using Corning Technology, and the Jingbo-finished non-Corning cover glass is being used in smartphones sold by the Chinese smartphone company, Vivo Communication Technology Co. Ltd. ("Vivo").  On information and belief, Vivo devices including non-Corning cover glass finished by Jingbo using Corning Technology have been sold, distributed, or used throughout the world.  Corning has tested samples of cover glass from Vivo's commercially available Y83 smartphones and

---

[2] A redacted copy of the Agreement is attached as Exhibit 1 and is incorporated herein by reference.  Under Section 8 of the Agreement, the Agreement is confidential information belonging to Corning, and Corning has the right to determine which contents of the Agreement to keep confidential.  Corning has redacted certain portions of these Exhibits because Corning's allegations in this Complaint are sufficient to support Corning's claims without reference to the redacted portions, and Corning wishes to exercise its right under the Agreement to keep the redacted portions confidential.  On information and belief, Jingbo also has its own confidential copy of the Agreement that it executed with Corning.  After this case commences, Corning intends to move for a Protective Order governing all confidential information relevant to this case, including an un-redacted, confidential copy of the Agreement.

confirmed that Jingbo is finishing non-Corning glass using Corning Technology covered by the Agreement.

11.     Corning sent Jingbo a letter on August 15, 2018 demanding that it stop using Corning Technology on non-Corning Glass.  On information and belief, Jingbo has nevertheless continued to misuse Corning Technology to finish non-Corning cover glass for use in Vivo phones.

12.     In Corning's August 15, 2018 letter, Corning also asked Jingbo to allow Corning to inspect Jingbo's facilities—per the terms of the Agreement, as explained below—to prevent further unauthorized use of Corning Technology on any glass other than Corning's Gorilla Glass. Jingbo has not allowed Corning to conduct the inspection.

13.     Jingbo's misuse of Corning Technology to finish non-Corning cover glass is a direct breach of the Agreement.  Jingbo's refusal to allow Corning to inspect Jingbo's facilities is a further breach of the Agreement.

14.     Jingbo's breaches of the Agreement are causing irreparable harm to Corning's business, have caused Corning monetary damages, and will continue to cause damages going forward.  Corning therefore brings this action seeking monetary damages and injunctive relief to stop Jingbo from using Corning Technology on any non-Corning glass.

## II.   PARTIES

15.     Plaintiff Corning Incorporated is a corporation formed under the laws of the State of New York, with its principal place of business at One Riverfront Plaza in Corning, New York. Corning has been headquartered in Corning, New York for 150 years.

16.     Defendant Dongguan Jingbo Optoelectronics Co., Ltd. is a corporation formed under the laws of China with its principal place of business at No. 2 Zhenglongheng Rd., Hi-Tech Park, Tangxia, Dongguan, China.

## III.    JURISDICTION AND VENUE

17.     This Court possesses subject matter jurisdiction under 28 U.S.C. § 1332 because there exists complete diversity between the Parties and the amount-in-controversy exceeds $75,000.00.

18.     This Court has personal jurisdiction over Jingbo regarding Corning's claims of breach of contract pursuant to the Agreement.  Specifically, Jingbo agreed to be subject to personal jurisdiction in this Court in Section 16 of the Agreement, which provides that the United States District Court for the Western District of New York shall be the exclusive forum for disputes arising out of or relating to the Agreement:

> The construction and performance of this Contract shall be in accordance with the law of the State of New York (apart from its conflict of laws principles). All disputes, controversies or differences which may arise out of or relating to this Agreement, or the breach, termination or invalidity thereof, that the Parties are unable to resolve through good faith negotiation shall be exclusively and finally settled by litigation to be conducted exclusively before the U.S. Federal District Court located in the Western District of New York.

Agreement Section 16.  Corning's claims in this action arise out of and relate to the Agreement because they are claims for breach of the Agreement.  Jingbo has thus consented to personal jurisdiction in this Court and waived any assertion of *forum non conveniens*.  The parties engaged in good faith negotiations to resolve this dispute but have been unable to do so.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and/or § 1391(c). Venue is proper in this district at least because: (1) pursuant to 28 U.S.C. § 1391(c)(3), Defendant Jingbo is a foreign corporation that is not resident in the United States and thus may

be sued in any judicial district; (2) pursuant to 28 U.S.C. § 1391(b)(3), Defendant Jingbo is

subject to personal jurisdiction in this District under the Agreement's dispute resolution

provision at Section 16; and (3) pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of the

events or omissions giving rise to the claim occurred in this District because the Corning

Technology disclosed to Jingbo under the Agreement was developed by Corning in this District.

## IV.    FACTS COMMON TO ALL CLAIMS

### A.    CORNING AND ITS HISTORY OF INNOVATION

20.    Corning is one of the world's leading innovators in materials science.  For more

than 167 years, Corning has applied its leading expertise in glass science, optical physics, and

other materials technologies to develop products that transform industries and enhance people's

lives.

21.    Corning has made a longstanding and unwavering commitment to research,

development, and engineering.  Corning is home to one of the longest operating research

laboratories in the United States, the Sullivan Park Science & Technology Center in Corning,

New York, which was founded in 1908.  At more than 2 million square feet, Corning's Sullivan

Park research laboratory is the central location for Corning's research and development efforts

worldwide.  Sullivan Park continues to be Corning's primary location for early stage research

and product development efforts.

22.    Corning's commitment to research and development has resulted in a long history

of innovations.  Among many other innovations, Corning developed the first glass bulbs for

Thomas Edison's electric light, the glass used for the primary mirror in the Hubble Space

Telescope, the windows used in U.S. space vehicles, the first heat-resistant Pyrex glass for

cooking, and the first low-loss optical fiber that helped usher in the telecommunications revolution.

**B.     CORNING'S GORILLA GLASS INNOVATIONS**

23.     In 2007, Corning pioneered cover glass for mobile devices by inventing a tough, thin, and optically pristine glass surface that is optimized for touchscreen applications. Corning's cover glass product, called Corning Gorilla Glass, was the first cover glass ever used in mobile devices, and it created the cover glass industry.

24.     Developing cover glass suitable for mobile devices was a difficult challenge because the glass must satisfy many different (and often conflicting) goals at once.  Specifically, cover glass must be durable enough so that it is more likely to survive when dropped, resilient against scratches (*e.g.*, from rubbing against car keys), thin, lightweight, optically clear, and responsive to touch.  Because of these many challenges, before Corning developed Gorilla Glass, there had never been a cover glass product for mobile devices.  Corning had to invest in significant research and development—and invent many new glass technologies—to produce Gorilla Glass that is durable and resistant to scratching or breakage, while also being thin and light, with exceptional optical clarity and responsiveness for touchscreen cover applications.

25.     To date, there have been six generations of Gorilla Glass products.  The original Gorilla Glass product significantly outperformed the plastic covers commonly used in mobile devices at that time.  In addition, the original Gorilla Glass had nearly 3 times the durability of "soda-lime" glass (the most prevalent type of glass) at roughly half the thickness.

26.     Each subsequent generation of Gorilla Glass has improved on the performance of the prior generation.  For example, in 2012, Corning launched Gorilla Glass 2, which enabled up to a 20% reduction in glass thickness, while maintaining industry-leading damage resistance and

scratch-resistance.  In 2013, Corning launched Gorilla Glass 3, which further improved resistance to scratching and provided 3 times the resistance to lateral cracking.  In 2014, Corning launched Gorilla Glass 4, which dramatically improved drop performance—surviving 80% of the time when dropped from a height of 1 meter onto a rough surface.  In 2016, Corning launched Gorilla Glass 5, which further raised the bar for protection against drops, surviving 1.6-meter, shoulder-height drops onto hard, rough surfaces up to 80% of the time—up to 4 times better than competitive glasses.  In 2018, Corning launched Gorilla Glass 6, which on average can survive 15 consecutive drops from 1 meter onto rough surfaces and is up to 2 times better than Gorilla Glass 5.  Under the same test conditions, competitive cover glass did not even survive the first drop.  Corning has achieved these strength and performance increases while maintaining or improving other key performance characteristics such as thinness, optical clarity, and touch sensitivity.

27.     Gorilla Glass was developed as a result of Corning's extensive research, development, and engineering efforts.  These innovations have been developed primarily in Corning's research facilities in New York.  Corning's research and development efforts include thousands of hours of testing Gorilla Glass.  These tests are key to Corning's success, because in order to learn how to strengthen the glass, Corning must study how the glass behaves and learn what causes the glass to break or scratch.  Corning therefore performs an extensive array of complex tests to bend, break, drop, scratch, squeeze, and strike the glass to see how it performs.  By studying the results of these tests, Corning develops ways to improve the glass through careful adjustments to the glass composition, manufacturing, and finishing processes.  Through this massive and ongoing commitment to research, Corning has developed many innovations, all of which contribute to the making of Gorilla Glass, including: optimized glass compositions, a

"fusion" process for forming strong, pristine, and thin sheets of glass with exceptional optical clarity, and special "finishing" techniques that strengthen the glass by creating toughened surface layers that act like "armor" against scratching and breakage.

28.     Among its many Gorilla Glass innovations, Corning has developed proprietary techniques for finishing glass using a chemical strengthening process called "ion exchange." This ion-exchange process generates what is known as "compressive stress" in the outer layers of the Gorilla Glass that acts like armor to protect the glass.  Applying these proprietary finishing techniques results in Gorilla Glass with patented, proprietary, and innovative "stress profiles" in which the stress varies from certain compressive stress regions near the surfaces of the glass to a tensile stress region near the center of the glass.  Corning's patented and proprietary finishing technologies impart these unique stress profiles to Gorilla Glass products to help make them exceptionally durable and damage resistant.  These finishing processes, combined with Corning's proprietary glass compositions, enable Gorilla Glass to resist damage from impacts and scratches better than any competing cover glass.

29.     Corning protects many of its Gorilla Glass innovations as proprietary and closely-guarded trade secrets.  These trade secrets include many highly confidential finishing techniques for Gorilla Glass—such as the recipes, temperatures, timing, and steps used in Corning's ion-exchange process, as well as techniques to measure the imparted stress profiles.  Due to the extremely high value of these trade secrets, Corning makes extensive efforts to preserve and maintain the confidentiality of this information.  Documents describing these trade secrets are required to be maintained in a secure location and are shared only pursuant to non-disclosure and confidentiality agreements on a need-to-know basis.

30.     Corning also has been awarded multiple patents on its Gorilla Glass innovations in the United States and in many other countries around the world, including China.  Among many others, Corning has obtained the following patents directed to strengthened glass-based articles with stress profiles that make them resistant to breaking, scratching, and other damage:

- U.S. Patent No. 9,908,811 B2 (the "US-811 patent"), titled "Fusion Formable Glass-Based Articles Including A Metal Oxide Concentration Gradient."  The US-811 patent issued on March 6, 2018 and claims priority to Provisional U.S. Patent Application 62/266,411 (the "US-411 application"), which was filed on December 11, 2015.[3]  *See* Ex. 2 (US-811 patent), pg. 2 (Related U.S. Application Data); *see also* Ex. 3 (US-411 application).  The US-811 patent is directed to "strengthened glass-based articles" with "unique stress profiles" that may be used as a cover glass for mobile electronic devices.  *See* Ex. 2 (US-811 patent) at Col. 8:37-55.

- China Utility Model Patent No. CN206986034 U (the "CN-034 patent"), titled "Glass-Based Articles and Devices Containing the Same."  *See* Ex. 5 (certified translation of CN-034 patent) at pg. 1 (Cover Page).[4]  The CN-034 patent was issued on February 9, 2018 and claims priority under the Patent Cooperation Treaty ("PCT") to the US-411 application.  *See id.*

C.     **CORNING'S RELATIONSHIPS WITH FINISHERS**

31.     As part of the process to manufacture Gorilla Glass, Corning works closely with multiple companies, called "finishers," that provide certain services for finishing and producing

---

[3] The US-811 patent is attached as Exhibit 2 and is incorporated herein by reference.  The US-411 application is attached as Exhibit 3 and is also incorporated herein by reference.
[4] The CN-034 patent and a certified English translation of the CN-034 patent are attached as Exhibits 4 and 5, and they are incorporated herein by reference.

Corning Gorilla Glass.  Under Corning's agreements with these finishers, Corning teaches the finishers certain Corning proprietary technology for finishing and producing Gorilla Glass, including Corning's patented techniques and trade secrets for chemically strengthening cover glass.  The finishers then use Corning's proprietary technology to finish and produce Gorilla Glass.  Under Corning's agreements with the finishers, the finishers are expressly prohibited from using Corning's proprietary technology on non-Corning glass and are required to keep the Corning technology strictly confidential.

32.     Jingbo is one of the finishers with whom Corning has signed an agreement to finish Corning Gorilla Glass.

### D.     THE AGREEMENT BETWEEN CORNING AND JINGBO

33.     Effective June 3, 2017, Corning and Jingbo entered into the Agreement for Jingbo to provide finishing services for Corning's Gorilla Glass products (*see* Ex. 1).

34.     Under the Agreement, Corning agreed to teach Jingbo its proprietary technologies—which are defined in the agreement as "Corning Technology"—so that Jingbo could use those technologies to finish Corning Gorilla Glass purchased from Corning and then sell the finished Gorilla Glass to mobile device manufacturers.  *See* Agreement Section 3(a) ("In connection with Corning's sale of Gorilla Glass to Finisher, Corning anticipates that it will transfer Corning Technology to Finisher to enable Finisher to perform the services requested of it or agreed to be performed by it for its Prospective Customers.").  Among other things, the Corning Technology covered by the Agreement includes innovative and highly confidential finishing techniques, as well as innovative and patented stress profiles that make the cover glass exceptionally strong and damage resistant and techniques for measuring those stress profiles.

35.     In return, the Agreement requires that Jingbo must use the Corning Technology

only on Gorilla Glass purchased from Corning.  *See* Agreement Section 3(b)(ii) ("Corning Technology may only be practiced on Gorilla Glass purchased by Finisher from Corning."); Agreement Section 3(b)(iii).

36.     Jingbo expressly agreed that it would not use Corning Technology on any glass other than Corning Glass.  *See* Agreement Section 6(a) ("Finisher represents, warrants and covenants that it will not use any Corning Technology other than as permitted in clause 3(b) above.").

37.     Jingbo further agreed to protect Corning Technology from disclosure or misuse and that it must do so "in the same manner as [Jingbo] protects its own trade secrets."  *See* Agreement Section 3(b)(iv); *see also* Agreement Section 6(c) ("Finisher represents and warrants that it will use all reasonably prudent and diligent efforts to protect Corning Technology from unauthorized disclosure and/or misuse.").

38.     Jingbo thus received the opportunity to use Corning Technology so that it could sell finished Gorilla Glass to mobile device manufacturers.  In return, it agreed to strictly maintain the confidentiality of Corning Technology and to only use such technology on Corning's Gorilla Glass.

39.     The "Corning Technology" that can only be practiced on Corning Gorilla Glass is defined in the Agreement to include multiple Corning technologies, including the following examples (among others):

- "***Corning Know-How***," which is defined in the Agreement as: "know-how, processes, formulae, and other teachings owned, developed or licensed by Corning that may be used to perform certain services required to provide a finished glass product."  *See* Agreement Sections 1(c), 1(h), 3.

- "***Improved Impact Resistance Technology***," which is defined in the Agreement to include: "Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, to improve component level impact resistance."  *See* Agreement Sections 1(d), 1(h), 3.

- "***Corning's Improved Component Level Impact Resistance/Drop Performance Technology***," which is defined in the Agreement to include: "Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, related glass articles which exhibit improved component level impact resistance/drop performance.  This includes, but is not limited to the technology and information which is disclosed in U.S. Patent Application Nos. …62/266,411, filed on December 10, 2015 [Title: Fusion-Formable, Glass-Based Articles Including a Metal Oxide Concentration Gradient] … and any other issued U.S. or Foreign Patent or filed Patent Application directly or indirectly claiming or entitled to claim the benefit of priority from such patent, or a divisional, continuation, continuation-in-part, reissue, reexamination, substitute or extension thereof."  *See* Agreement Sections 1(e), 3.

**E.     THE AGREEMENT CONTAINS AN INSPECTION PROVISION TO ALLOW CORNING TO CONFIRM THAT CORNING TECHNOLOGY IS NOT BEING MISUSED OR DISCLOSED TO OTHERS**

40.     To ensure that Jingbo is using reasonably prudent and diligent efforts to protect Corning Technology from disclosure and/or misuse, the Agreement also provides that Corning and its representatives shall have the right to inspect Jingbo's operations and security procedures. Specifically, Corning has the right to inspect Jingbo's operations to ensure Corning information is not being misused or improperly disclosed.  *See, e.g.*, Agreement Section 3(b)(v) ("Corning and its representatives shall have the right to review and inspect Finisher's operations and

14

security procedures to ensure that Finisher is using reasonably prudent and diligent efforts to protect Corning Technology from further disclosure and/or misuse and to confirm Finisher's compliance with the terms of this Agreement.").

### F.   JINGBO AGREED THAT CORNING IS ENTITLED TO INJUNCTIVE RELIEF TO BAR JINGBO FROM USING CORNING TECHNOLOGY ON GLASS OTHER THAN GORILLA GLASS

41.     The requirement that Jingbo use Corning Technology only on Corning Gorilla Glass was so important that the Parties agreed that Corning would be entitled to injunctive relief in the event Jingbo started using the Corning Technology on non-Corning glass.  Specifically, under Section 6 of the Agreement, Corning is entitled to injunctive relief to bar Jingbo from using Corning Technology except as provided by Section 3(b), which requires that Jingbo may use Corning Technology only on Corning Gorilla Glass.  *See* Agreement Section 6(a) ("Finisher represents, warrants and covenants that it will not use any Corning Technology other than as permitted in clause 3(b) above."); Agreement Section 6(d) ("[T]he injured Party is entitled, in addition to all other remedies available, to equitable relief by injunction or otherwise to enforce its rights and require compliance by the breaching or defaulting Party with the representations, warranties and covenants assumed in this clause 6, without the necessity of proving that money damages alone would not provide adequate compensation and without the necessity of posting a bond.").

42.     Accordingly, the Agreement entitles Corning to obtain injunctive relief to stop Jingbo from using Corning Technology on any glass other than Corning Gorilla Glass.  *See id.*

### G.   CORNING'S DISCLOSURE OF "CORNING TECHNOLOGY" TO JINGBO UNDER THE AGREEMENT

43.     In late October and early November 2017, pursuant to the Agreement, and so that Jingbo could finish Gorilla Glass, Corning engineers disclosed Corning Technology for making

Corning's fifth-generation Gorilla Glass ("Gorilla Glass 5") to Jingbo representatives at Jingbo's facility in Dongguan, China.

44.     Corning summarized the disclosures made to the Jingbo representatives in a presentation given to Jingbo titled "GG5 Technical Transfer to Jingbo for Vivo 0.78 mm 2.5D, Final Summary and Report," dated October 31 to November 3, 2017 ("Corning-Jingbo Gorilla Glass 5 Presentation").

45.     The Corning-Jingbo Gorilla Glass 5 Presentation explains that Corning transferred its "GG5 ion exchange and metrology processes" to Jingbo during the week of October 31, 2017.  The presentation also explains that as a result of this technology transfer from Corning to Jingbo, Corning's technology transfer team "deems Jingbo fully capable to produce GG5 parts for Vivo."

46.     The Corning-Jingbo Gorilla Glass 5 Presentation includes a confidentiality stamp marking the presentation as containing information that is "Corning Restricted - Confidential under NDA."  The presentation further explains that:

> This presentation contains Corning Restricted information and is intended solely for those with a need to know. It may not be distributed, in whole or part, in any form by any means, or by any person or organization without authorization from Corning Incorporated.

47.     Pursuant to the Agreement, Corning provided Jingbo with additional extremely confidential technical documents describing proprietary and secret Corning Technology for finishing Gorilla Glass 5.  This highly confidential documentation included the "Corning® Gorilla® Glass 5 Chemical Strengthening Specification, Application Note" ("Corning Gorilla Glass 5 Application Note") which provides the chemical strengthening specification and detailed guidelines for the Corning Gorilla Glass 5 ion-exchange process.  The Corning Gorilla Glass 5 Application Note was marked as "Corning Restricted – Confidential under NDA."  The

Application Note further explains:

> This document contains copyrighted, highly confidential information belonging to Corning Incorporated. The document is provided in accordance with a license to Corning's technology and with non-disclosure and confidentiality agreements between Corning and its customers. This document must be maintained in a secure location and shared on a need to know basis only, and this document may not be copied or shared with third parties unless Corning has consented in advance. Upon expiration or termination of the license to Corning Gorilla Glass 5, this document should be returned to Corning or destroyed.

48.     Corning also provided Jingbo with highly confidential documentation regarding Corning's Gorilla Glass 5 Standard Operating Procedures for metrology (*i.e.*, measurement techniques required to manufacture Gorilla Glass 5).

49.     Corning also provided Jingbo with its proprietary Gorilla Glass 5 Software for use in manufacturing Gorilla Glass.

50.     The trade secrets and technology that Corning disclosed to Jingbo for use in finishing Gorilla Glass 5 are covered under the definition of "Corning Technology" in the Agreement. For example, the Agreement provides that the Corning Technology covered under the Agreement includes: "Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, related glass articles which exhibit improved component level impact resistance/drop performance." *See* Agreement Sections 1(e), 3. The highly confidential Gorilla Glass 5 technology that Corning disclosed to Jingbo is thus covered under the definition of Corning Technology because, among other reasons, it is used to impart improved component level impact resistance/drop performance. *Id.*

51.     In addition, patented Corning Technology that Corning shared with Jingbo is covered under the definition of "Corning Technology" in the Agreement. For example, the Corning Technology that Corning shared with Jingbo includes the technology described in

Corning's US-411 application, as well as Corning's US-811 patent and CN-034 patent that claim priority to the US-411 application.  *See* Agreement Sections 1(h), 3.

### H.   AFTER CORNING DISCLOSED THE CORNING TECHNOLOGY TO JINGBO, JINGBO BEGAN MISUSING IT TO FINISH NON-CORNING COVER GLASS

52.     On information and belief, at least as early as the spring of 2018, less than a year after Corning had disclosed the Corning Technology to Jingbo, Jingbo began using Corning Technology to finish non-Corning cover glass in breach of the Agreement.  Specifically, Jingbo began using the Corning Technology to finish non-Corning cover glass for use in mobile devices, including Vivo smartphones.

53.     On information and belief, Jingbo then began selling Jingbo-finished non-Corning cover glass for use in Vivo smartphones.  The non-Corning cover glass finished by Jingbo for Vivo smartphones directly competes with Corning's Gorilla Glass cover glass products.  Vivo products using non-Corning glass finished by Jingbo include at least the Vivo Y83 smartphone shown below.



*See* Ex. 6 (providing a copy of Vivo's smartphone products webpage, downloaded from

http://www.vivo.com/en/products on October 10, 2018).

54.     On information and belief, including Corning's meetings and correspondence with Vivo and Jingbo, Vivo's Y83 smartphones use non-Corning cover glass finished by Jingbo.

55.     Corning has also purchased commercially available Vivo Y83 smartphones and tested their cover glass for use of Corning Technology.  On information and belief, the cover glass samples that Corning tested were finished by Jingbo.  The tests indicate that Jingbo has finished non-Corning cover glass using Corning Technology in at least two respects.

56.     **_First_**, the non-Corning cover glass finished by Jingbo uses Corning Technology described in multiple Corning patents whose disclosures are included within the definition of Corning Technology under the Agreement.  For example, the Agreement defines Corning Technology to include any U.S. or foreign patents or patent applications that claim priority to Corning's US-411 application (among other patents and applications).  *See* Agreement Sections 1(e), 1(h), 3.  Accordingly, under the Agreement, the disclosures of Corning's US-811 and CN-034 patents are both Corning Technology covered by the Agreement because they both claim priority to the US-411 application.

57.     Corning's US-811 patent is directed to, among other things, "fusion-formable, glass-based articles exhibiting improved damage resistance, including improved fracture resistance."  *See* Ex. 2 (US-811 patent) at 1:22-24.  For example, claim 1 of the US-811 patent recites:

A glass-based article comprising:

[1.1] a first surface and a second surface opposing the first surface defining a thickness (t) (mm);

[1.2] a concentration of a metal oxide that is both non-zero and varies along a thickness range from about 0•t to about 0.3•t;

[1.3] a surface compressive stress of about 200 MPa or greater; and

[1.4] a central tension (CT) region comprising a maximum CT (MPa) of less than about 71.5/√(t).

*See* Ex. 2 (US-811 patent), claim 1.  The Jingbo-finished non-Corning glass in the Vivo Y83 smartphones meets each of the requirements of claim 1 of the US-811 patent.  In particular, the Jingbo-finished non-Corning glass is a glass-based article comprising:

1. a first surface and second surface with a thickness (t) of approximately 0.72mm;

2. a concentration of a metal oxide that is both non-zero and varies along a thickness range from about 0 to about 0.216mm (*i.e.*, 0.3•0.72mm);

3. a surface compressive stress greater than 200 MPa;

4. a central tension (CT) region comprising a maximum CT (MPa) of less than about 84.26 MPa (*i.e.*, 71.5/√(0.72mm)).

58.    Similarly, Corning's CN-034 patent is directed to, among other things, "fusion-formable, glass-based articles exhibiting improved damage resistance, including improved fracture resistance."  *See* Ex. 5 (certified translation of CN-034 patent) at ¶0003.  For example, claim 2 of the CN-034 patent recites:

A glass-based article, characterized in comprising:

[2.1] a first surface and a second surface opposing the first surface defining a thickness (t) (mm);

[2.2] a concentration of a metal oxide that is both non-zero and varies along a thickness range from about 0•t to about 0.3•t; and

[2.3] a central tension (CT) region comprising a maximum CT (MPa) of less than about 71.5/√(t),

[2.4] wherein the article exhibits at least one of:

(i) a threshold failure impact force greater than 500 Newtons when the article is bent to impart a tensile stress of 100 MPa; and

(ii) a retained strength of 125 MPa or more after being impacted by an impact force of 800 N when the article is bent to impart a tensile stress of 100 MPa.

*See id.*, claim 2.  The Jingbo-finished non-Corning glass in the Vivo Y83 smartphones meets each of the requirements of claim 2 of the CN-034 patent.  In particular, the Jingbo-finished non-Corning glass is a glass-based article comprising:

1.  a first surface and a second surface opposing the first surface defining a thickness of approximately 0.72mm;

2.  a concentration of a metal oxide that is both non-zero and varies along a thickness range from about 0mm to about 0.216mm (*i.e.*, 0.3•0.72mm);

3.  a central tension (CT) region comprising a maximum CT (MPa) of less than about 84.26 MPa (*i.e.*, 71.5/√(0.72mm));

4.  wherein the article exhibits:

(i)     a threshold failure impact force greater than 500 Newtons when the article is bent to impart a tensile stress of 100 MPa; and

(ii)     a retained strength of 125 MPa or more after being impacted

by an impact force of 800 N when the article is bent to impart

a tensile stress of 100 MPa.

59.     ***Second***, as defined in the Agreement, Corning Technology includes: "Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, related [to] glass articles which exhibit improved component level impact resistance/drop performance." *See* Agreement Sections 1(e), 1(h), 3.  Corning's testing of the non-Corning glass finished by Jingbo indicates that it was finished using such Corning Technology.  Specifically, pursuant to the Agreement, Corning disclosed its highly confidential information and trade secrets for improving the component level impact resistance/drop performance of Gorilla Glass by providing Jingbo with Corning's Gorilla Glass 5 Application Note, the Corning-Jingbo Gorilla Glass 5 Presentation, and in-person training at Jingbo's facility in October and November 2017.  The non-Corning glass finished by Jingbo has stress profile and performance characteristics that match those obtained from finishing cover glass with Corning Technology.  In addition, on information and belief, Jingbo is using Corning Technology to increase its efficiency and yield in finishing non-Corning cover glass.

**I.     JINGBO REFUSED CORNING'S REQUEST TO INSPECT JINGBO'S FACILITY AS PROVIDED IN THE AGREEMENT**

60.     On August 15, 2018, after investigating Jingbo's use of Corning Technology, Corning sent a letter ("Notice Letter") to Jingbo explaining that Corning had discovered that Jingbo was finishing non-Corning cover glass for Vivo smartphones using Corning Technology in violation of the Agreement.  For example, Corning explained that the non-Corning cover glass finished by Jingbo uses technology described in Corning patents covered by the Agreement, including the CN-034 patent.  Corning asked that Jingbo immediately stop using the Corning

Technology to finish non-Corning glass.  Corning also asked to conduct an inspection of Jingbo's facilities to determine if Jingbo was continuing to use Corning Technology on non-Corning glass.

61.     In addition, after discussing Corning's concerns in person with Jingbo representatives in September 2018, Corning sent Jingbo an email on September 19, 2018 requesting written confirmation that Jingbo will (1) immediately cease finishing any non-Corning glass using any Corning Technology provided to Jingbo pursuant to the protections provided in the Agreement; (2) immediately cease making, using, or selling strengthened Li-based glasses that infringe Corning's patents, including (but not limited to) Chinese utility model patent CN206986034; and (3) allow Corning to conduct an immediate inspection of Jingbo's facility as required by the Agreement—and as Corning had previously requested on August 15, 2018.

62.     Jingbo refused Corning's requests.  Despite multiple requests from Corning, Jingbo has not agreed to allow Corning to inspect Jingbo's facility for misuse of Corning Technology on non-Corning glass.  On information and belief, Jingbo continues to use Corning Technology to finish non-Corning glass.

## CAUSES OF ACTION

## COUNT I

**Jingbo's Breach of the Agreement Regarding Misuse of Corning Technology**

63.     Corning realleges and incorporates by reference the allegations in paragraphs 1-62 above as if fully set forth herein.

64.     Effective June 3, 2017, Corning and Jingbo executed the Agreement, which among other things granted Jingbo a limited license to practice Corning Technology exclusively

on Corning Gorilla Glass.  The Agreement was bargained-for by the parties and supported by sufficient consideration and has remained valid and enforceable since its execution.

65.      Corning has fulfilled and performed all its obligations under the Agreement to date.

66.      The Agreement remains in full force and effect and has neither expired nor been terminated.

67.      Corning Technology is defined in the Agreement to include, among other things: "Corning's proprietary technology, including trade secrets, know-how, processes, formulae, and other teachings, related to glass articles which exhibit improved component level impact resistance/drop performance."  *See* Agreement Sections 1(e), 1(h), 3.  Corning Technology also includes the technology described in the US-411 application (among others) and any U.S. or foreign patent or patent application that claims priority to the US-411 application, including at least the US-811 and CN-034 patents.  *See id.*

68.      Section 3(b) of the Agreement permits Jingbo to practice Corning Technology only on Corning Gorilla Glass, and Section 6(a) prohibits Jingbo from using Corning Technology other than as permitted in Section 3(b).

69.      Jingbo has violated Section 3(b) and Section 6(a) of the Agreement by finishing non-Corning cover glass using Corning Technology.  The non-Corning cover glass finished by Jingbo has stress profile characteristics for strengthened cover glass that are described and claimed in Corning's US-811 and CN-034 patents.  In addition, on information and belief, the non-Corning cover glass finished by Jingbo was produced using Corning's trade secrets and confidential know-how that were disclosed to Jingbo in multiple meetings and documents, including (but not limited to) Corning's Gorilla Glass 5 Application Note, the Corning-Jingbo

Gorilla Glass 5 Presentation, and in-person training at Jingbo's facility in October and November 2017.

70.     On information and belief, Jingbo is breaching the agreement by finishing non-Corning cover glass using Corning Technology even after Corning sent Jingbo a Notice Letter explaining the breach on August 15, 2018.

71.     As a result of Jingbo's breach of contract, Corning has suffered and continues to suffer damages including, but not limited to, lost sales, loss of reputation, harm to goodwill, and price erosion.  Corning is entitled to recover from Jingbo damages adequate to compensate for Jingbo's breach, in an amount to be determined at trial.

72.     Jingbo's violations of Section 3(b) and Section 6(a) have also irreparably harmed Corning, and Corning is entitled under Section 6(d) of the Agreement to injunctive relief.

## COUNT II

### Jingbo's Breach of the Agreement Regarding Corning's Right to an Inspection

73.     Corning realleges and incorporates by reference the allegations in paragraphs 1-72 above as if fully set forth herein.

74.     Section 3(b)(v) of the Agreement provides that "Corning and its representatives shall have the right to review and inspect Finisher's operations and security procedures to ensure that Finisher is using reasonably prudent and diligent efforts to protect Corning Technology from further disclosure and/or misuse and to confirm Finisher's compliance with the terms of this Agreement."

75.     Jingbo has breached Section 3(b)(v) of the Agreement by refusing Corning's request in its August 15, 2018 Notice Letter to review and inspect Jingbo's operations and security procedures for further misuse and/or unauthorized disclosure of Corning Technology.

Despite multiple requests from Corning, Jingbo has not agreed to allow Corning to inspect Jingbo's facility for misuse of Corning Technology on non-Corning glass.

76.     Corning is entitled to specific performance permitting Corning to conduct a review and inspection of Jingbo's facilities pursuant to Agreement Section 3(b)(v).  The language of the Agreement is sufficiently definite for the Court to enforce, and the contract, including the inspection provision, is just and reasonable.  Moreover, the specific performance requested by Corning merely seeks to enforce Jingbo's existing obligations under the Agreement.

77.     Absent specific performance, Corning will suffer substantial, irreparable injury for which monetary damages will not provide adequate compensation.  For example, without enforcement of its inspection rights, Corning will be unable to monitor whether the Corning Technology is being used and protected in compliance with the Agreement.  Likewise, Corning will be unable to determine the full scope of any breach in order to take corrective action. Corning's inspection rights under the Agreement constitute a critical and material safeguard, without which Corning would not have shared its highly confidential technology and trade secrets with Jingbo.

78.     Under the Agreement Section 6(d), Corning is entitled to injunctive relief (in addition to all other remedies) to enforce its right to a review and inspection under Section 3(b)(v).  *See* Agreement Section 6(d) ("[T]he injured Party is entitled, in addition to all other remedies available, to equitable relief by injunction or otherwise to enforce its rights and require compliance by the breaching or defaulting Party with the representations, warranties and covenants assumed in this clause 6, without the necessity of proving that money damages alone

would not provide adequate compensation and without the necessity of posting a bond."); *see also* Agreement Sections 6(a), 6(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Corning requests that the Court enter judgment against Jingbo as follows:

A.   That Jingbo has breached and is breaching the Agreement;

B.   That Jingbo and its respective officers, agents, directors, servants, employees, affiliates, representatives, attorneys, and any others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns be preliminarily and permanently enjoined from (1) using or disclosing any Corning confidential information or trade secrets that Jingbo obtained from Corning, except with respect to finishing Corning glass under the Agreement and (2) using technology described in the patents and applications covered under the definition of Corning Technology in the Agreement, including at least the claims of the US-811 patent and the CN-034 patent, except with respect to finishing Corning glass under the Agreement;

C.   That Jingbo be ordered to compensate Corning in money damages in an amount demonstrated at trial, including all damages due to Jingbo's breaches of the Agreement;

D.   That Jingbo be ordered to provide restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Jingbo as a result of its breaches of the Agreement;

E.   That Jingbo be required to provide specific performance of the review and inspection provision of Section 3(b)(v) so that Corning may conduct the review and inspection of Jingbo's facilities to which it is entitled under the Agreement;

F.   That Jingbo be ordered to pay Corning its litigation costs and attorneys' fees; and

G.   That Corning be awarded all such other relief in law and equity as the Court deems proper.

## JURY DEMAND

Corning demands a trial by jury on all issues so triable.

Dated: December 3, 2018            **WARD GREENBERG HELLER & REIDY LLP**


            s/ Eric J. Ward
Eric J. Ward
William R. Leinen
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700
eward@wardgreenberg.com
wleinen@wardgreenberg.com

**WILMERHALE LLP**

Michael J. Summersgill (*pro hac vice application to be filed*)
Kevin S. Prussia (*pro hac vice application to be filed*)
60 State Street
Boston, Massachusetts 02109
(617) 526-6261
michael.summersgill@wilmerhale.com
kevin.prussia@wilmerhale.com

Arthur W. Coviello (*pro hac vice application to be filed*)
950 Page Mill Road
Palo Alto, California 94304
(650) 858-6069
arthur.coviello@wilmerhale.com

*Attorneys for Plaintiff Corning Incorporated*